IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MAUREEN A. ALLMENDINGER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 14-cv-582-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Maureen A. Allmendinger is before the Court, represented by counsel, seeking judicial review of the final agency decision denying her Disability Insurance Benefits (DIB).

### Procedural History

Plaintiff initially applied for benefits in March 2012, alleging disability beginning on October 1, 2011. (Tr. 16). The claim proceeded to a hearing before ALJ Sheila McDonald, who issued an unfavorable decision on January 22, 2014. (Tr. 16-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this court.

### Issues Raised by Plaintiff

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 11.

1

Plaintiff raises the following points:

1. The ALJ erred in determining plaintiff's RFC by failing to find additional limitations, rejecting the treating doctor's opinion, failing to consider the side effects of medications and difficulty concentrating, and failing to account for new evidence submitted to the Appeals Council.

2. The ALJ erred in assessing plaintiff's credibility by failing to make sufficiently specific findings regarding her testimony or follow the applicable cases.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically

2

> determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** See also, ***Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the

3

five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled… If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See**, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)(citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995))**.

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920,**

**921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ McDonald followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of diverticulitis, reflux esophagitis, and back pain. The ALJ further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary level, with physical limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was able to perform her past relevant work as an administrative assistant. (Tr. 16-22).

## The Evidentiary Record

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

1. **Agency Forms**

Plaintiff was born in 1949 and was sixty-one years old at her alleged onset date. She is insured for DIB through September 30, 2015. (Tr. 207). She was five feet eight inches tall and weighed two hundred and forty pounds. (Tr. 210). She completed four years of college and was a Microsoft applicant specialist. (Tr. 211).

According to plaintiff, her chronic back pain, diverticulitis, ulcer, poor circulation, arthritis, hypertension, and hyperlipidemia limited her ability to work. (Tr. 210). She previously worked as an administrative assistant, executive assistant, and product manager. (Tr. 212).

Plaintiff took Bentyl and Percocet for pain, Colace for constipation, Plavix as a blood thinner, Prinivil for hypertension, Pravachol for diabetes, Prilosec for acid reflux, and Zofran for nausea. (Tr. 213). Plaintiff also had prescriptions for Pravastatin for GERD, Lisinopril for high blood pressure, and hydrocodone for pain. (Tr. 247).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing on December 12, 2013. (Tr. 29). She was sixty-three years old at the time of the hearing and lived in a second floor apartment with her son and his fiancé. (Tr. 31-33). The apartment did not have an elevator and plaintiff stated she had difficulty climbing the stairs to get to her apartment. (Tr. 33).

In 2004, plaintiff obtained a bachelor degree in business administration from the University of Phoenix. (Tr. 33-34). She held several administrative assistant jobs before and after receiving her degree. (Tr. 34-39). She left her most recent job in September 2011 because her health was deteriorating. (Tr. 35-36). At the time of the hearing, plaintiff's only income was derived from social security. (Tr. 33).

Plaintiff stated her claim for disability was based on her chronic back pain, diverticulitis, ulcer, poor circulation, arthritis, and hypertension. (Tr. 40).

She stated she experienced back and leg pain since 2008 and that it severely limited her activities. (Tr. 41). Plaintiff stood during several portions of the hearing in order to alleviate her back and abdominal pain. (Tr. 37, 41, 51). She stated that standing helped to stop her muscle spasms in the lower left side of her back.(Tr. 42). She testified her diverticulitis and ulcers caused her to vomit and experience pain. She only took medication for diverticulitis when it flared because the medication was very strong. (Tr. 42). Additionally, she took Prilosec for her ulcers instead of a prescription because she could not afford the medication her doctor prescribed. (Tr. 42, 52).

Plaintiff stated her leg pain could reach a six or seven out of ten and that time was the only thing that helped it stop hurting. (Tr. 44). She took pain medication every day but tried to limit the amount of hydrocodone she took because it made her "foggy" and unable to concentrate. (Tr. 45). Plaintiff stated she visited a pain management doctor in 2012 but no longer receives treatment from that doctor. (Tr. 52).

On a typical day, plaintiff testified that she could usually only stay awake for about an hour and a half before she needed to lie back down. Most of her day was spent laying down or sitting in a chair watching television. (Tr. 46). Her son and his fiancé would make all of her meals and did all of the housekeeping. (Tr. 46-47). Occasionally she would wash a dish, like her coffee mug, but she could only use one hand because she needed the other to help her balance. (Tr. 46, 51). She made her son take her laundry to the laundromat and perform any lifting, but she actually did the laundry. (Tr. 47). She was able

to bathe herself but needed a shower chair and always made sure someone was home while she bathed. (Tr. 47-48). Plaintiff stated she used a walker and that she only went to stores where she could use a cart to shop, such as Walmart, because she was unable to walk long distances. (Tr. 48).

A vocational expert (VE) also testified. (Tr. 54-59). The ALJ asked the VE a hypothetical that comported with the ultimate RFC assessment, that is, a person with plaintiff's age and work history who was able to do less than the full range of sedentary work. (Tr. 56). The person would need to alternate between sitting and standing for one to two minutes every hour but would not need to step away from the work station. Additionally, the person could never climb ladders, ropes, or scaffolds, crouch or crawl, work at unprotected heights, or work with dangerous machinery. She could only occasionally climb stairs and ramps, stoop, and kneel. (Tr. 57). The VE testified that this person could perform plaintiff's previous work as well as other positions that exist in significant numbers in the national economy. (Tr. 57-58). Examples of such jobs are inspector, sedentary assembler with a stand or sit option, and sedentary packer with a stand or sit option. (Tr. 58).

### 3. Medical Record

Plaintiff's first visit on record to her primary care doctor, Dr. Joseph Kennington, was in June 2011. (Tr. 256-62). His diagnoses at the time were uncontrolled type two diabetes mellitus, abdominal aneurysm without rupture, disorder of lipid metabolism, hypertension, and tobacco use. (Tr. 262). She

saw Dr. Kennington again in November and the records indicate plaintiff had similar diagnoses. (Tr. 271).

Plaintiff saw Dr. Kennington eight times in 2012. (Tr. 278, 292, 305, 314, 325, 338, 443, 460). She frequently had abdominal pain accompanied by vomiting, tenderness in her abdomen, and pain in her lower leg. (Tr. 278-83, 293, 316, 338, 443). He prescribed Hydrocodone as well as several other medications to help alleviate symptoms. (*Ex.*, Tr. 293-94, 301, 444-45, 459). His diagnoses included uncontrolled type two diabetes mellitus, hypertension, disorder of lipoid metabolism, diverticulitis, peripheral vascular disease, abdominal aneurysm, and hernia. (Tr. 283, 293, 305, 316, 444-45, 460). Dr. Kennington's records indicate plaintiff was reluctant to go to the emergency room or use certain prescriptions due to her financial difficulties. (Tr. 281).

In February 2012, plaintiff presented at the emergency room with abdominal pain, tenderness, vomiting, and an endoleak of an aortic graft was noted. Plaintiff had an aneurysm sac that increased in size and the CT scan showed a renal cyst, diverticulitis, and a hiatal hernia. (Tr. 252-53). In mid-March, plaintiff had surgery for placement of an aortic stent by Dr. Vito Mantese. A week later, plaintiff returned to the emergency room with nausea, vomiting, and severe abdominal pain. (Tr. 361). She was admitted for eight days and was diagnosed with hypertension and diverticulitis. (Tr. 362).

At the end of March, plaintiff returned to Dr. Mantese's office with a left groin seroma as a result of the aortic stent surgery. The seroma was drained by Dr. Ketan Desai who also performed a debridement of the soft tissue in

plaintiff's left groin. (Tr. 350). Plaintiff returned to the hospital in June with more abdominal pain and vomiting. (Tr. 373). She was admitted for four days and the discharge notes indicate her pain was related to a ventral hernia and mesh for its repair she had placed in her abdomen years prior. (Tr. 386). She was referred to a pain specialist and pain medications were prescribed. The doctor noted plaintiff was not a candidate for surgical repair because she had too many other complications in her abdomen. (Tr. 387).

Plaintiff continued to see Dr. Kennington in 2013 and complained of back pain, nausea, vomiting, and abdominal pain. (Tr. 467-494). Towards the end of 2013 she reported episodes of memory loss and skin discoloration on her left leg that caused pain. (Tr. 489). In October 2013, she returned to the hospital with nausea and vomiting and received medications for her peptic ulcer disease. (Tr. 565).

**4. Opinion of Treating Physician**

In 2013, Dr. Kennington filled out two medical source statements regarding plaintiff's physical capabilities. (Tr. 417-24). In both statements he diagnosed plaintiff with chronic abdominal pain, abdominal aneurysm, diabetes, coronary artery disease, and hypertension. (Tr. 417, 421). Dr. Kennington opined that plaintiff could sit, stand, or walk for one hour or less and could occasionally lift five pounds but never any more weight. He felt plaintiff could not carry any weight and was limited in balancing. She could occasionally reach above her head and never stoop. (Tr. 418, 422). Dr. Kennington noted plaintiff had objective indications of pain such as muscle atrophy, muscle spasm, reduced

range of motion, sensory disruption, and motor disruption. He stated that plaintiff's diagnosed impairments would cause her to miss work and be late three or more times a month. (Tr. 419, 423).

### 5. Consultative Examination

In July 2012, plaintiff had a physical consultative examination performed by Dr. Adrian Feinerman. (Tr. 407-15). His examination notes indicated plaintiff had mild difficulty getting on and off the exam table, tandem walking, standing on her toes and heels, and arising from a chair. Additionally, she was unable to squat and rise. Dr. Feinerman's diagnostic impressions were abdominal aortic aneurysm, diverticulitis, peptic ulcer disease, degenerative joint disease, and hypertension. (Tr. 411).

### 6. Records Not Before the ALJ

After the ALJ issued her decision, plaintiff submitted additional medical records to the Appeals Council in connection with her request for review. See AC Exhibits List, Tr. 4. Thus, the medical records at Tr. 567-603, designated by the Appeals Council as Exhibit 11F and 12F were not before the ALJ. Therefore, they cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. ***Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012);** ***Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).**

Plaintiff does not argue that the Appeals Council erroneously refused to consider the additional medical records as new and material evidence pursuant to 20 C.F.R. §404.970(b). Rather, her argument is, in effect, that the Appeals

11

Council erred in denying review. See, Doc. 15, pp. 11-12. However, that is an argument that this Court cannot entertain.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain review in this Court of a "final decision of the Commissioner of Social Security." When the Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner, and it is the decision of the ALJ which is reviewed by this Court. **20 C.F.R. §404.981;** ***Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993).** The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and it is not subject to review by this Court. **42 U.S.C. § 405(g);** ***Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).**

It is true that the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law**.** ***Farrell*, 692 F3d at 770-771**. Here, plaintiff has not cited ***Farrell*** and has not argued that the Appeals Council committed a mistake of law. Accordingly, the Appeals Council order denying review stands, and this Court cannot consider the additional records from Dr. Kinnington in reviewing for substantial evidence.

### Analysis

Plaintiff first argues the ALJ incorrectly determined her RFC and improperly analyzed the record. The Court agrees with plaintiff's contention that the ALJ failed to properly assess her RFC.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." **20 C.F.R. § 404.1545(a)(1)**. In other words, RFC is the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means eight hours a day for five days a week, or an equivalent work schedule. **Social Security Ruling 96-8P, 1996 WL 374184, at *2 (July 2, 1996) ("S.S.R. 96-8P")**; *Pepper v. Colvin*, **712 F.3d 351, 362 (7th Cir. 2013)**.

In assessing a claimant's RFC, the ALJ must consider *all* of the relevant evidence in the record, and provide a "narrative discussion" that cites to specific evidence and describes how that evidence supports the assessment. The ALJ's analysis and discussion should be thorough and "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." **S.S.R. 96-8, at *5, 7**. Additionally, the Seventh Circuit has held that an ALJ's assessment must evaluate "evidence of impairments that are not severe" and "must analyze a claimant's impairments in combination." *Arnett v. Astrue*, **676 F.3d 586, 591-92 (7th Cir. 2012)**, *Terry v. Astrue*, **580 F.3d 471, 477 (7th Cir. 2009)**, *Craft v. Astrue*, **539 F.3d 668, 676 (7th Cir. 2008)**.

The ALJ's analysis here was far from thorough and failed to assess all of plaintiff's impairments. For example, the ALJ briefly mentioned plaintiff's

abdominal aortic aneurysm, ulcer, and poor circulation when she determined they were not severe impairments. (Tr. 18). She only referenced the abdominal aneurysm once more when she discussed plaintiff's hospitalizations in 2012. (Tr. 21). Yet, the record indicates plaintiff regularly experienced pain and nausea from her aneurysm and ulcer, and recently experienced more leg pain due to her poor circulation. (Tr. 316, 338, 460, 489, 490). Moreover, all of plaintiff's records indicate she had uncontrolled type two diabetes, yet, the ALJ fails to mention anywhere in her opinion that plaintiff even had diabetes, let alone that it could affect her ability to work. (Ex., Tr. 262, 283, 316, 444). The ALJ's opinion does not indicate she considered these impairments sufficiently as she provided no discussion of their effects independently or in combination.

    The ALJ also failed to discuss significant portions of the record that were in opposition to her final determination. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." **Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014)**.

    Here, ALJ McDonald ignored evidence undermining her opinion. For example, she noted portions of the record where plaintiff's diverticulitis was not a problem; however she failed to acknowledge the records showing plaintiff's diverticulitis was active and causing plaintiff pain, nausea, and vomiting. (Tr. 281, 357, 361, 444). The ALJ stated plaintiff's records showed no abnormalities in the abdomen and no indications of pain after June 2012. However, the

record reveals plaintiff saw her primary care physician and returned to the hospital with abdominal pain in late 2012 and in 2013. (Tr. 460, 474, 489, 559).

She also stated plaintiff was never referred to a specialist or a pain management consultant. (Tr. 21). The records show plaintiff was referred to a gastroenterologist as well as pain management specialists, but plaintiff was unable to seek treatment from those sources due to her lack of income. (Tr. 52, 386, 490). The ALJ stated plaintiff did not need additional surgeries on her abdomen, but she fails to note that her doctors indicated additional surgeries were not recommended and would not be beneficial. (Tr. 387). She stated plaintiff's medications were commonly prescribed, but plaintiff's medical records and her testimony indicated she was unable to pay for more expensive medications. (Tr. 52, 281, 361). The ALJ failed to consider plaintiff's inability to pay for services and failed to inquire as to why plaintiff did not seek additional treatment. The Seventh Circuit has repeatedly held this is error. **See,** ***Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013),** ***Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013),**

Finally, while the ALJ gave adequate reasons as to why she gave Dr. Kennington's opinions "little weight," it is unclear how she determined plaintiff's RFC. When Dr. Kennington's opinion is excluded from the record the Court is unable to identify evidence the ALJ relied upon to determine plaintiff could perform sedentary work. The ALJ only mentioned the consultative examination by Dr. Feinerman in one sentence and failed to state whether she

gave his opinion any weight at all. Moreover, when she did address Dr. Feinerman's examination, she failed to acknowledge the limitations Dr. Feinerman noted about plaintiff's mobility and did not mention his diagnoses. (Tr. 21).

An ALJ must build logical bridge from evidence to conclusion. To permit meaningful review, the ALJ must explain sufficiently what she meant. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002)." **Kastner v. Astrue, 697 F.3d 642, 646 (7th Cir., 2012).** Here, the ALJ does not consider all of plaintiff's medically determinable impairments, she does not mention records in opposition to her opinion, and she fails to explain how she determined plaintiff's RFC. Therefore, her opinion must be remanded.

It is not necessary to address plaintiff's other points at this time. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

Plaintiff's motion for summary judgment is granted. The Commissioner's final decision denying Maureen A. Allmendinger's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for

rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: April 22, 2015.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**